**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

**VICTOR OSWALD ROBINSON, JR.,**

***Plaintiff,***

**v.**

**ATHENS-CLARKE COUNTY, GEORGIA, *et al.*,**

***Defendants.***

**CIVIL ACTION NO.
3:26-cv-00053-TES**

## ORDER OF DISMISSAL

Pro se plaintiff Victor Oswald Robinson, Jr. commenced this action on May 13th, 2026, by filing a civil rights suit under 42 U.S.C. § 1983 against several defendants: Athens-Clarke County ("ACC"); Mediko, Inc. ("Mediko"), the healthcare provider for the ACC jail; Sheriff John Q. Williams, supervisor for the Athens-Clarke County Jail ("Defendant Williams"); and John Does 1–20, "deputies, jail officials, supervisors, and medical personnel whose identities are presently unknown." [Doc. 1, pp. 1–2].

Defendant Mediko filed a motion to dismiss Plaintiff's complaint—with prejudice—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and a memorandum of law in support of its motion. [Doc. 5], [Doc. 5-1]. Mediko argues that Plaintiff's claim is facially implausible and that Plaintiff failed to sufficiently allege a policy or custom of Mediko that violated his constitutional rights. [Doc. 5].

Defendants ACC and Williams joined in their own motion to dismiss Plaintiff's complaint—with prejudice—for failure to state a claim under Rule 12(b)(6) and a brief in support of their motion. *See generally* [Doc. 6]. Defendants ACC and Williams claim that (a) Plaintiff failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act before commencing this action, (b) Plaintiff failed to sufficiently allege a policy or custom of ACC that violated his constitutional rights, and (c) Defendant Williams is entitled to qualified and Eleventh Amendment immunity for claims brought against him. [Doc. 6, p. 1].

Following Defendants' motions to dismiss, Plaintiff filed a motion for limited early discovery. *See generally* [Doc. 13]. In his motion, he requests "narrowly tailored early discovery" to assist in the Court's factual determinations concerning the Prison Litigation Reform Act administrative-remedy-exhaustion defense. [*Id.* at p. 1]. Plaintiff included several attachments to his motion: a memorandum of law [Doc. 13-1], a personal declaration [Doc. 13-2], an exhibit [Doc. 13-3], a document detailing the nature of his proposed discovery [Doc. 13-4], and a proposed order [Doc. 13-5].

Both Defendants' motions to dismiss are ripe for review. Upon review of Plaintiff's complaint, accepting the facts it sets forth as true and drawing all reasonable inferences in Plaintiff's favor, the Court **DISMISSES** Plaintiff's claims against Defendant ACC with prejudice. The Court also **DISMISSES** Plaintiff's claims against

Mediko and Williams, and purported claims against John Does 1–20, without prejudice.[1]

## FACTUAL BACKGROUND

Plaintiff was arrested in or about September 2023 [Doc. 1, p. 2].[2] He was detained at the Athens-Clarke County Jail ("ACCJ") for 28 months. [*Id.*]. After that time, all charges against him were dismissed, and Plaintiff was released. [*Id.*]. Plaintiff claims his prolonged detention was "without adequate judicial resolution and due process protections." [*Id.*].

Plaintiff claims that, while he was incarcerated, Defendants acted or failed to act in many ways that violated his Fourteenth Amendment rights. Namely, he alleges that Defendants: (a) failed to provide him with prescribed medications, (b) failed to provide him with adequate medical treatment in two separate instances, (c) failed to provide

---

[1] The Court can—and, here, should—dismiss these claims without prejudice under Rule 12(b)(6). Although a dismissal under Rule 12(b)(6) is a judgment on the merits—and so is presumed to operate as a dismissal with prejudice—the Court may, in its discretion, specify otherwise. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 929 (11th Cir. 2016). The Eleventh Circuit has instructed that, because the Rules require a chance to amend to be "freely given when justice so requires," the Court's discretion to dismiss with prejudice is "severely" restricted. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing Fed. R. Civ. Proc. 15(a)). In cases where the plaintiff has acted in good faith and has not been given a first chance to amend his initial complaint, the Eleventh Circuit treats dismissal with prejudice as a remedy "of last resort." *Eiber Radiology*, 673 Fed. App'x at 929 (citing *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993)). Although such leniency is not generally given where plaintiff has been represented by counsel, the Court finds this leniency appropriate due to Plaintiff's pro se status. *Id.*

[2] When ruling on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986). Therefore, the facts as presented here are the facts set forth in Plaintiff's complaint, with all reasonable inferences drawn in his favor.

him with adequate nutrition and caloric intake, and (d) failed to protect him from other incarcerated individuals. [*Id.* at pp. 2–3].

Specifically—according to Plaintiff's complaint—Defendants did not provide him with medications included on a list given to jail officials by his primary care physician shortly after Plaintiff's arrest. [*Id.* at p. 2]. After Defendants' failure to provide the medicine, Plaintiff suffered severe chest pain and general "medical distress," leading to his hospitalization. [*Id.*]. After hospital physicians "determined the presence of toxins or harmful substances in Plaintiff's blood" and prescribed him with heart medication, Defendants continued to "fail[] to provide" what Plaintiff considered to be "adequate treatment." [*Id.*].

Further, Plaintiff's complaint states that he is diabetic and required a medically appropriate diet during incarceration, which Defendants failed to provide. [*Id.*]. Defendants only provided approximately 1,600 calories per day, "substantially below" his required intake, forcing him to purchase commissary food and causing him to lose 35 pounds—weight he regained after release. [*Id.*].

Finally, in an incident recorded on deputy body cameras, Plaintiff was attacked by another inmate. The attack came after Plaintiff informed "at least three deputies" that he faced a threat from either that inmate or someone else. [*Id.* at p. 3]. After the assault, Plaintiff required medical evaluation and treatment. [*Id.*]. He suffered a "serious

head injury." [*Id.*]. He claims that Defendants failed to take reasonable protective measures against the assault and to provide adequate medical treatment in its wake.

From these events, Plaintiff suffered from a list of injuries: physical injury, cardiac complications, emotional distress, loss of liberty, and financial harm. [*Id.* at p. 4].

Plaintiff brings a claim under 42 U.S.C. § 1983 for a violation of his "rights under the Fourteenth Amendment to the United States Constitution." [*Id.* at pp. 4–5]. He asserts the following counts: (1) unlawful and prolonged detention, (2) denial of adequate medical care, (3) failure to protect, (4) unconstitutional conditions of confinement, and (5) municipal liability. [*Id.* at pp. 5–6]. He seeks damages in the form of compensatory damages, punitive damages, costs and fees, and any other relief that this Court deems proper. [*Id.* at p. 5].

## LEGAL STANDARD

Defendants seek to dismiss Plaintiff's action against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)).

### A. Motions to Dismiss

When ruling on a 12(b)(6) motion to dismiss, district courts must accept the facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter—accepted as true—that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although the Rules do not require detailed factual allegations, they do require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted); Fed. R. Civ. P. 8.

To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.*

The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the

complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

So, if the allegations fail to state a claim for relief that is "plausible on its face," then dismissal for failure to state a claim is appropriate. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

> A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice. *Id*.

*Downing, Sr. v. Dist. Att'y, Macon Jud. Cir.*, No. 26-10076, 2026 WL 2470147, at *2 (11th Cir. Aug. 24, 2026). When a complaint does not allege *what* a defendant did as a factual matter, it necessarily fails to plead contents that would allow a court to draw a reasonable inference that the defendant is liable. *Id.* For example, if a complaint alleges that an anonymous "John Doe" is liable—or directs any allegations in a complaint to "Defendants" as a whole—then the complaint may not be facially plausible for 12(b)(6) purposes. *Id.*

### B. <u>Pro Se Litigants</u>

Complaints filed by pro se parties are construed liberally. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Courts hold pro se parties' allegations to a less stringent standard than formal pleadings drafted by lawyers. *Id.*

But this leniency has its limits. Despite the Court's liberal construction, a pro se litigant is still required to follow a court's local rules and the Federal Rules of Civil Procedure like litigants who are represented by counsel. *Fotse v. Angel Oak Prime Bridge, LLC*, 2020 WL 9936688, at *4 (N.D. Ga. Feb. 27, 2020) (citing *Allison v. Utah Cnty. Corp.*, 335 F. Supp. 2d 1310, 1313 (D. Utah 2004)). And, this leniency "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2024). Further, a court reading a pro se complaint "need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

With the foregoing standards in mind—and taking the facts asserted in Plaintiff's Complaint as true—the Court rules on Defendant's Motion to Dismiss.

## DISCUSSION

Defendants ACC and Williams move to dismiss under Rule 12(b)(6) on three grounds. First, Defendants claim that Plaintiff failed to properly exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PRLA") before filing his action. [Doc. 6, p. 1]. Second, Defendants claim that Plaintiff failed to sufficiently allege the existence of an Athens-Clarke County Jail ("ACCJ") policy or custom that violated his constitutional rights. [*Id.*]. Third, Defendants allege that

Defendant Williams is entitled to immunity from Plaintiff's suit: both qualified immunity for claims brought against him in his individual capacity and Eleventh Amendment immunity for claims brought against him in his official capacity. [*Id.*].

Defendant Mediko moves to dismiss under Rule 12(b)(6) on two grounds. [Doc. 5]. First, Mediko claims that Plaintiff fails to present sufficient, non-conclusory factual allegations supporting a reasonable inference that Mediko is liable for unlawful acts or omissions. [*Id.*]. Mediko argues that Plaintiff's complaint is facially implausible and fails to sufficiently allege the existence of a Mediko policy or custom that violated his constitutional rights. [*Id.*].

This Court considers each motion, liberally construing the allegations in Plaintiff's complaint, taking his factual allegations as true, and viewing them in the light most favorable to the Plaintiff.

### A. <u>Plaintiff's Failure to Allege Wrongdoing by Defendant ACC</u>

The sheriff is responsible for operating the county jail. *Manders v. Lee*, 228 F.3d 1304, 1315 (11th Cir. 2003) (citing *In re Irvin*, 328 S.E.2d 215, 217 (Ga. 1985)); O.C.G.A. § 42-4-1. For liability under § 1983, "a determination must be made as to 'who the policymaker is and in which particular area that policymaker acted.'" *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1331 (11th Cir. 2003) (*en banc*) (quoting *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287–88 (11th Cir. 1998)). In other words, for the county government to be liable under § 1983, it must have either had control over Defendant Williams in the

performance of his duties in operating the county jail or acted independently of Williams.

Here, Plaintiff does not allege that Defendant ACC acted independently of the Sheriff regarding his operation of the jail; rather, his alleged injuries all have to do with his incarceration at the jail and treatment during his incarceration in the jail. *See generally* [Doc. 1]. In fact, Plaintiff doesn't include the county government in the facts of his complaint at all, except in the context of the operation of the county jail. *Id.* And, here, ACC did not have control over Defendant Williams in performance of his duties operating the jail, because Williams, as sheriff, is not under the county's authority.

Under Georgia law, sheriffs are not county employees. *Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903, 903 (Ga. 1990) (explaining that the sheriff is an "elected, constitutional officer[]"). As the Georgia Supreme Court has made clear, sheriffs are independent from county governments and are subject instead to the Georgia legislature. *Id.* In other words, the local county government has no authority to control a sheriff in performance of his duties operating a jail under state law. The Eleventh Circuit has made clear that "'*local governments [such as counties] can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control*.'" *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1331 (11th Cir. 2003) (*en banc*) (quoting *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998)).

Thus, because Plaintiff's complaint fails to state a claim against ACC independent of his § 1983 claims concerning his incarceration at the ACCJ, and because Defendant ACC has no authority over the sheriff's duty to operate the jail—including providing medical care—Plaintiff fails to state a claim upon which relief can be granted against Defendant ACC.

Plaintiff's claims against Defendant ACC are dismissed with prejudice.

### A. Plaintiff's Failure to Allege the Existence of a Policy or Custom

First, Plaintiff's complaint fails to state essential facts supporting a Section 1983 claim against Defendants ACC—a county government—and Mediko—a corporation that provides healthcare for that county government's jail. Namely, Plaintiff's complaint fails to properly allege that either defendant's policy or custom caused his alleged Section 1983 injuries, as opposed to their respective agents' individual choices.

County governments work through their employees. So, a plaintiff who sues a county government under Section 1983 must show that the county *itself* injured the plaintiff by having a policy or practice that caused the injury. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978).

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* To put it another way, under *Monell*, a plaintiff can't say that a county is liable just because its employee did something wrong. Instead, the wrongdoing must have been done to execute the county's policy or custom. This is called the *Monell* standard.

A plaintiff may establish a policy's existence by identifying "(1) an officially promulgated . . . policy or (2) an unofficial custom or practice . . . shown through the repeated acts of a final policymaker." *Woods v. Jud. Corr. Servs., Inc.*, No. 2:15-CV-00493-RDP, 2019 WL 2388995, at *11 (N.D. Ala. June 5, 2019) (quoting *Grech*, 335 F.3d at 1329).

In fact, if the plaintiff at hand claims not that the county *directly* inflicted the injury but instead that it caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employees." *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). Thus, when asserting such a claim, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [county]. The plaintiff must also demonstrate that, through its *deliberate* conduct, the [county] was the 'moving force' behind the injury alleged." *Id.* at 404. If the policy or custom from which the plaintiff claims the injury flowed is facially lawful, the plaintiff must demonstrate that the custom or policy was instituted or continued with "deliberate indifference" to the "known or obvious consequences." *Id.* at 407.

Private companies, too, enjoy *Monell* protection from vicarious liability. *See Brennan v. Headley*, 807 F. App'x 927, 937 (11th Cir. 2020); *Buckner*, 116 F.3d at 452–53;

*Woods*, 2388995 at *11 (quoting *Bd. of Cnty. Comm'rs of Bryan City, Okla. v. Brown*, 520 U.S. 397, 404 (1997)) ("To present a viable § 1983 claim against a . . . private entity[], a plaintiff must show that a . . . policy or custom was the 'moving force' behind an injury."). So, even when a private company acts on behalf of a county government, a Section 1983 plaintiff seeking to hold it vicariously liable for the acts of its employees must demonstrate that those employees acted as part of the private company's policy or custom, such that the company was the moving force behind the injury, not its employees' independent actions.

Here, Plaintiff's complaint alleges that *all* constitutional violations allegedly committed by *all* Defendants were "caused by policies, customs, practices, and failures to train and supervise," citing to *Monell*. [Doc. 1, p. 5]. However, it fails to allege the existence of any particular policy or custom of either the ACC government or Mediko. *See generally* [*Id.*]. Further, the complaint fails to provide any nonconclusory facts giving rise to expectation that discovery could find such a policy or custom. [*Id.*]. In other words, as far as policies and customs go, the complaint provides only a threadbare conclusion—no supporting facts.

While the Court does understand that Plaintiff is a pro se litigant, and so construes his complaint with lenience, the Court is not counsel. Even with forgiveness, a judge can't invent missing facts. That means a court can't rewrite an inadequate complaint to plead essential allegations. *Campbell*, 760 F.3d at 1168–69. Neither can it

rewrite a pleading that is otherwise deficient to sustain an action. *Id.* This remains true even in cases involving pro se litigants. *Id.*

So, reading Plaintiff's complaint liberally, taking the facts asserted in it as true, and construing those facts in the light most favorable to Plaintiff, Plaintiff's complaint fails to assert nonconclusory facts to support the existence of a policy or custom in this case—a necessary element to allege Section 1983 liability for either Mediko or ACC.

Thus, the Court dismisses Plaintiff's claims against Defendants Mediko without prejudice and against ACC with prejudice.

**B. <u>Failure to Exhaust Under the Prison Litigation Reform Act</u>**

Moving on, Plaintiff's alleged failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") is not dispositive to this order. From Plaintiff's complaint, it appears that he filed his complaint after his release so that he is not required by the PLRA to have pursued administrative remedies while incarcerated. But, even if we assume that the PLRA applies, the relevant claims against Defendants ACC and Williams would be dismissed regardless, for reasons stated above and below. So, even assuming the PLRA does apply, the Court would nonetheless dismiss without needing to perform PLRA exhaustion analysis.

First up is the likeliest scenario. The PLRA's exhaustion provision, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [Section 1983] *by a prisoner confined in any jail, prison, or other*

*correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The statute defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

So, by the plain language of the PLRA, Section 1997e(a) does not apply to former prisoners, or those who have been released from a correctional facility, because former prisoners are clearly not "incarcerated or detained" or "confined in any . . . correctional facility." 42 U.S.C. § 1997e(a), (h). Instead, the statute applies to people who seek a civil remedy *while* incarcerated. *See Harris v. Garner*, 190 F.3d 1279, 1284 (11th Cir. 1999) (overruled on other grounds) (arguing similarly regarding Section 1997e(e)).

Here, according to Plaintiff's complaint, he was arrested "in or about September 2023." [Doc. 1, p. 2]. Then, he was incarcerated for "approximately 28 months" before all charges against him were dropped. [*Id.* at p. 1]. Plaintiff filed his initial complaint on May 13, 2026. [*Id.*]. If Plaintiff was arrested in September of 2023 and held for 28 months, then that would place his release squarely in January of 2026—four months before his complaint was filed. That would make him a former prisoner so that the PLRA would not apply. Any failure of the Plaintiff to exhaust administrative remedies is no impairment to his claim.

### C. <u>Qualified Immunity and Sovereign Immunity</u>

Defendant Williams asserts both qualified immunity and Eleventh Amendment immunity as defenses: qualified immunity as to claims brought against him in his personal capacity, and Eleventh Amendment immunity as to claims brought against him in his official capacity. [Doc. 6, p.1]. He is right. He is shielded from suit by both forms of immunity.

First, Defendant Williams is entitled to qualified immunity to Plaintiff's claims brought against him in his individual capacity.

"Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform [in carrying out] their duties." *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023). Qualified immunity may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The motion to dismiss "will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Id.* (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)). At the motion to dismiss stage, whether the complaint alleges a violation of a clearly established constitutional right is determined based on the facts of Plaintiff's complaint. *St. George*, 285 F.3d at 1337. Once an officer has raised the defense of qualified immunity, the burden of persuasion falls to the plaintiff. *Id.* To show that qualified immunity is not appropriate, "the plaintiff must establish two things: (1) the defendant violated a constitutional right, and (2) that constitutional right

was 'clearly established' at the time of the defendant's actions." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024) (quoting *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023)).

Supervisory officials are not liable under Section 1983 for the unconstitutional acts of their subordinates based on respondeat superior or vicarious liability. *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Instead, Plaintiff must claim that the supervising official's personal actions caused the alleged constitutional deprivation, such as through a custom or a policy that shows "subjective awareness of a substantial risk of serious harm to the inmate." *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013)).

Here, Plaintiff sues Defendant Williams as the official responsible for "supervision, operation, policies, and training related to the [Athens-Clarke County Jail]." [Doc. 1, p. 2]. His complaint goes on to detail conduct undertaken in part by unnamed personnel. [*Id.*]. Despite Plaintiff's claim that all Defendants, including Defendant Williams, "violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution," Plaintiff does not allege that Defendant Williams participated in these constitutional violations outside of his roles in supervision and training. *See generally* [Doc. 1]. To put it another way, Plaintiff only alleges that Defendant Williams participated in a supervisory role. Plaintiff's complaint does not

present a causal connection between Defendant William's personal actions or policies and any constitutional violation. With that in mind, Plaintiff fails to show that Defendant Williams' actions caused the alleged constitutional deprivations. So, taking the facts alleged in the complaint as true, Defendant Williams is entitled to qualified immunity to Plaintiff's claims brought against him in his individual capacity.[3]

Second, Defendant Williams is entitled to Eleventh Amendment immunity to Plaintiff's claims brought against him in his official capacity.

"As a general proposition, the states, as sovereigns, enjoy immunity from lawsuits brought against them without their consent." *Williams v. Bd. of Trustees of the Univ. of Ala.*, 128 F.4th 1208, 1214 (11th Cir. 2025) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000)). That immunity also extends to "'arms of the [s]tate.'" *Id.* (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)) (cleaned up). But, there are two exceptions. "First, Congress, acting pursuant to its Fourteenth Amendment enforcement powers, . . . may 'abrogate' states' immunity" by "'unequivocally expressing its intent to strip the states of their immunity," so long as Congress's use of that authority exhibits "'congruence and proportionality between the injury to be prevented or remedied and

[3] The Court may evaluate the two prongs of qualified immunity analysis in any order, based on its sound discretion. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Here, because Plaintiff fails to show that Defendant Williams's behavior could be a clearly established constitutional violation, the Court does not need to more thoroughly examine the merits of the Fourteenth Amendment claims as pertains to Defendant Williams.

the means adopted to that end.'" *Williams*, 128 F.4th at 1214 (citing U.S. Const. amend XIV, § 5). Second, a state "may consent to be sued." Id. at 1215.

Sheriffs and their employees are arms of the state. "Under Georgia law, sheriffs are state officials for Eleventh Amendment purposes." *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1368 (M.D. Ga. 2012) (citing *Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003)). Furthermore, "employees of the sheriff, deputies . . . in their official capacities, are also entitled to Eleventh Amendment immunity." *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) (per curiam). However, counties are not entitled to Eleventh Amendment sovereign immunity. *Galette v. N.J. Transit Corp.*, 146 S. Ct. 854, 873 (2026) ("[T]he Court has long recognized that cities and counties are not arms of the State despite serving public functions and exercising police powers."). Therefore, absent an exception, Defendant Williams, the sheriff "responsible for supervision, operation, policies, and training related to [Athens-Clarke County Jail]," [Doc. 1, p. 2], is entitled to Eleventh Amendment immunity for acts in his official capacity.

There are no applicable exceptions. First, Congress did not abrogate the states' Eleventh Amendment immunity by passing Section 1983. *Robinson v. Ga. Dept of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992). Second, here, Georgia has not waived its Eleventh Amendment immunity. "Georgia has expressly waived its immunity from suit for claims sounding in tort and brought in state court, but did not waive immunity from actions brought in federal court." *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of*

*Fla.*, 692 F.3d 1200, 1204 (11th Cir. 2012) (citing O.C.G.A. § 50–21–23(b)). A state's consent to suit in state court does not constitute a waiver of immunity in federal court. *Robinson v. Ga. Dept of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992).

Therefore, since there are no applicable exceptions, Defendant Williams is entitled to Eleventh Amendment immunity against Plaintiff's Section 1983 claims to the extent that those claims were made against him in his official capacity.

In sum, Defendant Williams is entitled to both qualified and Eleventh Amendment immunity. Plaintiff's failure to allege Defendant Williams's possible participation in a clearly established constitutional violation entitles him to qualified immunity to suit as an individual. And, Defendant Williams's employment as an arm of the state entitles him to Eleventh Amendment immunity to suit in his official capacity.

Plaintiff's claims against Defendant Williams are dismissed without prejudice.

### D. <u>Fictitious Party Pleading Is Not Permitted in Federal Court</u>

"[F]ictitious party-pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *see also Plyatsko v. Benton*, No. 25-11784, 2026 WL 1195900, at *3 (11th Cir. May 1, 2026) (dismissing fictitious parties as early as the 1915(e)(2)(b) screening stage). There is one exception: "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).

Here, Plaintiff attempts to sue 20 fictitious parties "whose identities are presently unknown" under the names "John Does 1–20." [Doc. 1, p. 2]. The only identifying description Plaintiff offers for these unnamed people is that they are "deputies, jail officials, supervisors, and medical personnel." [*Id.*]. This description fails to sufficiently identify the defendants among the many deputies, jail officials, supervisors, and medical personnel employed or otherwise present at ACCJ in the 28 months Plaintiff was incarcerated. *See Richardson*, 598 F.3d at 738. Thus, the claim against "John Does 1–20" is not permitted in federal court.

The Court dismisses Plaintiff's claim against Defendant "John Does 1–20" without prejudice.

**D. <u>Plaintiff's Motion for Limited Discovery and Request for Leave to Amend</u>**

As a final note, the Court turns to the Plaintiff's remaining motions.

First, Plaintiff requests "leave to amend" his complaint in his response to Defendants' motion to dismiss. [Doc. 8, p. 5]. However, "[f]iling a motion is the proper method to request leave to amend a complaint," *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999); *see also Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). This motion must "(1) set forth the substance of the proposed amendment, or (2) attach a copy of the proposed amendment to the motion." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th Cir. 2020). The Eleventh Circuit has recently explained that when a

request for leave to file an amended complaint is not filed as its own separate motion, the "issue is not raised properly" and has "no legal effect." *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1312 (11th Cir. 2024) (quoting *Newton*, 895 F.3d at 1277).

Plaintiff's status as a pro se litigant does not exclude him from this firm rule. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

Here, Plaintiff's request to amend is improper, because it was made as part of his response in opposition to a motion to dismiss. [Doc. 8, p. 5]. Further, the request takes the form of a short paragraph, without either a copy of the proposed amendment or an explanation of its substance. [*Id.*]. So, Plaintiff's purported request has no legal effect.

Second, Plaintiff moves for limited discovery to help the Court determine whether he meets the PLRA's administrative exhaustion requirements. Because of this dismissal, his request is mooted.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant ACC's and Defendant Williams's motion to dismiss for failure to state a claim and **GRANTS** Defendant Mediko's motion to dismiss for failure to state a claim. Accordingly, this Court **DISMISSES** Plaintiff's claims against Defendant ACC with prejudice. The Court

also **DISMISSES** Plaintiff's claims against Defendants Mediko and Williams, and purported claims against John Does 1–20, without prejudice.

So ordered, this 9th day of September, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**